**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

In re:                                              *

**ALTER COMMUNICATIONS, INC.,**     *        **Case No.:  10-18241**
                                                             **(Chapter 11)**
　　　　**Debtor.**                           *

*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

**EMERGENCY MOTION OF DEBTOR FOR ENTRY OF INTERIM
AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

Alter Communications, Inc., debtor and debtor-in-possession (the "Debtor"), by its undersigned counsel, pursuant to Section 363 of the United States Bankruptcy Code (the "Bankruptcy Code"), moves for entry of an order authorizing the Debtor to use cash collateral as described below and in the attached proposed order.  In support, the Debtor states as follows:

<u>Jurisdiction and Venue</u>

1.　　　The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157.

2.　　　The relief sought in this Motion is based on Section 363 of the Bankruptcy Code.

<u>Background</u>

3.　　　On April 14, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and, pursuant to Sections 1107 and 1108 of the Bankruptcy Code, has continued in the possession of its property and management of its business as a debtor-in-possession.

4.      The Debtor is a Maryland corporation and is owed by the following:

| | | |
|---|---|---|
| Ronnie Buerger | 155 shares | 44.29% |
| Estate of Jodi Buerger | 34 shares | 9.71% |
| Andrew Buerger | 59 shares | 16.86% |
| Kevin Buerger | 34 shares | 9.71% |
| Danielle Bunting | 34 shares | 9.71% |
| Lauren Buerger Holub | 34 shares | 9.71% |

5.      The Debtor aspires to communicate to the communities it serves news, information and opinion that is useful, engaging, enjoyable and unique and to reflect the full range of diverse viewpoints, while also advocating positions that strengthen those communities. As of the Petition Date, the Debtor has approximately 45 employees and operates its business from an office leased by the Debtor and located at 1040 Park Avenue, Suite 200, Baltimore, Maryland.

6.      The Debtor was formed in 1919 when David Alter started the Baltimore Jewish Times. In 1972, Charles Buerger took over the business operations and developed the weekly publication into what is now regarded as the "Newsweek of Jewish journalism" with a readership of over 50,000.

7.      In 1989, the company launched Style magazine, published seven times a year, covering home design, fashion, food and regional travel. Style magazine has a readership of approximately 90,000 and is Baltimore's premier lifestyle publication, providing information for smart living in Baltimore.

8.      Moving towards its vision to become an integrated regional media company, in February 2001, the Debtor purchased its first magazine, Chesapeake Life, which is published four times a year. The magazine had been in existence since 1996, focusing on how to take advantage of the many things the Chesapeake region has to offer. From regional travel to great

places to eat, the magazine has become the ultimate guide for life around the Chesapeake. Chesapeake Life has a readership of approximately 57,000.

9.      In April 2002, the Debtor launched its full-service custom publishing division, Alter Custom Media.  The division's core strength is the ability to use a dedicated staff, as well as the Debtor's other magazine resources, to create and manage publications (both print and web-based) for its clients.  Through this division, the Debtor provides publication, web design, production, circulation management, content generation, editing and cost-effective printing services.  In a short period of time, the Alter Custom Media division gained a reputation for producing high quality custom publications.

10.     The Debtor is presently experiencing cash flow issues caused by extensive, contentious litigation with its former printer.  The Debtor filed this bankruptcy proceeding to stay the former printer's collection efforts while the Debtor reorganizes.

11.     The Debtor is a small business debtor as defined in Section 101(51D) of the Bankruptcy Code.

<u>Prepetition Secured Debt</u>

12.     On July 26, 2004, the Debtor and Wachovia Bank, National Association (the "Bank") entered into a Loan Agreement, pursuant to which the Bank agreed to make loans to the Debtor as agreed upon by the parties.  Pursuant to the Loan Agreement, the Bank made advances to the Debtor, with such advances being evidenced by the following promissory notes:

a.      Promissory note dated March 20, 2006 in the principal amount of $750,000;
b.      Promissory note dated April 3, 2008 in the principal amount of $46,500; and
c.      Promissory note dated June 9, 2008 in the principal amount of $117,000.

13.    As of April 8, 2010, the Debtor is indebted to Wells Fargo in the total amount of not less than $641,460 plus legal expenses, costs and interest.  Repayment is secured pursuant to several security agreements executed by the Debtor wherein the Debtor granted Wells Fargo a valid, perfected, first-priority blanket lien against all of the assets of the Debtor, including the Debtor's cash (the "Collateral").  All of the above instruments, documents, papers, etc., and all other documents evidencing, securing or relating to the Obligations (as defined herein) are collectively referenced as the "Loan Documents."  All amounts due or to become due under the Loan Documents are referred to herein collectively as the "Obligations."  The Debtor believes that it has no defense, counter-claim, offset, cross-complaint, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of the Debtor's liability to repay the Obligations.

14.    In addition, in December 2007, Andrew Buerger loaned $300,000 to the Debtor, which loan is secured by a valid, perfected, junior lien on the Collateral.  As of April 13, 2010, the Debtor is indebted to Mr. Buerger in the amount of $42,000 plus accrued interest.

15.    The Trust Formed Under the Last Will and Testament of Charles A. Buerger (the "Trust") also loaned $181,000 to the Debtor on or about July 1, 2001.  The Debtor's obligations to Ronnie Buerger, successor-in-interest to the Trust, are secured by a valid, perfected, junior lien on the Collateral.  As of April 13, 2010, the Debtor is indebted to Mrs. Buerger in the amount of $181,000 plus accrued interest.[1]  Upon information and belief, no other person has a lien on the Debtor's cash.[2]

---

[1] On or about February 1, 2010, Mrs. Buerger also made an unsecured loan to the Debtor in the principal amount of $50,000.  The Debtor owes Mrs. Buerger the entire principal of, and accrued interest on, that loan.

[2] On March 12, 2002, the Mayor & City Council of Baltimore, by and through the Department of Housing and Community Development ("Baltimore City"), loaned $150,000 to the Debtor, repayment of which was secured by a lien on substantially all of the Debtor's assets.  Upon information and belief, Baltimore City's financing statement lapsed.  The balance due on the loan is approximately $110,000.

<u>Relief Requested</u>

16.     By this Motion, the Debtor requests entry of an order pursuant to Section 363(c) of the Bankruptcy Code (i) scheduling a hearing as soon as the Court's calendar will allow to consider entry of an order authorizing and approving the Debtor's use of Cash Collateral (as defined in Section 363(a) of the Bankruptcy Code) on an interim basis; (ii) authorizing the Debtor to use the Cash Collateral of the Bank, Mr. Buerger and Mrs. Buerger (collectively, the "Secured Lenders") on an interim basis through May 14, 2010; (iii) scheduling a hearing on or before May 14, 2010 to consider entry of an order authorizing and approving the Debtor's use of Cash Collateral on a final basis; and (iv) authorizing the Debtor to use the Secured Lenders' Cash Collateral on a final basis.

17.     The Debtor requires use of the Cash Collateral to fund operations while the Debtor reorganizes.  Without use of the Cash Collateral, the Debtor will be unable to purchase materials from its vendors or fund payroll, and the Debtor will be forced to liquidate.  To prevent such liquidation, the Debtor requests approval of the use of Cash Collateral. Furthermore, the Debtor respectfully submits that it will suffer substantial, immediate and irreparable harm if relief is not granted on an interim basis.

18.     As adequate protection for the Secured Lenders, the Debtor proposes the following:

      a.      With respect to Wells Fargo, the Debtor shall continue to make their monthly payments due under the Loan Documents in accordance therewith.

      b.      The Debtor shall place any and all cash, checks or monies it collects, receives or derives from its business operations or the use of the Cash Collateral into the Debtor's debtor-in-possession bank account, which account shall be maintained at Wells Fargo.

      c.      The Debtor shall use the Cash Collateral to pay only reasonable and necessary operating expenses incurred in the ordinary course of the

Debtor's business, which expenses shall be identified in a 15-week budget provided by the Debtor to the Secured Lenders.

    d.    The Secured Lenders shall receive replacement liens, pursuant to Section 361(2) of the Bankruptcy Code, in and to all property of the estate of the kind presently securing repayment of the Debtor's prepetition obligations to the Secured Lenders (the "Postpetition Collateral") to the extent of any decrease or diminution in the value of the Secured Lenders' interest in their prepetition collateral (the "Prepetition Collateral"), with such liens attaching to the Postpetition Collateral to the same extent and in the same priority as such liens exist on the Prepetition Collateral as of the date on which the Debtor commenced this bankruptcy proceeding.

    e.    The replacement liens and security interests granted herein are valid, enforceable and fully perfected, and no further filings or recordation or other act in accordance with any applicable local, state or federal law, rule or regulation are necessary to create or perfect such liens and security interests.  Notwithstanding the above, the Debtor shall cooperate with Wells Fargo to execute such documents and instruments and do such other things as Wells Fargo reasonably requests to evidence and perfect such replacement liens and security interests, and the automatic stay is hereby modified to allow Wells Fargo to file such financing statements and other documents as it may deem necessary to perfect the liens and security interests granted herein.

    f.    Each Secured Lender shall have an allowed claim against the Debtor, which claim shall have priority over all other administrative expenses allowable against the Debtor under Section 507(b) of the Bankruptcy Code, to the extent that any part of the Cash Collateral is used by the Debtor for purposes not permitted by this Order or to the extent that the value of the Secured Lenders' Prepetition Collateral diminishes during the course of this case; provided, however, that the amount of any claim awarded pursuant to this paragraph shall be subject to determination by the Court upon proper notice and the opportunity for hearing.

    g.    Upon request by a Secured Lender, the Debtor shall provide the Secured Lender with a compliance report (in the same form as the budget) that documents the Debtor's actual use of cash during the period covered by the budget as to each budget line item.

19.    The Debtor served this Motion and a notice of hearing on the following parties by facsimile, electronic mail or hand delivery:  (a) the Office of the United States Trustee; (b) the Secured Lenders;; (c) the 20 largest unsecured creditors; and (d) any other parties who have

requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that no further notice is required.

WHEREFORE, for the reasons set forth above, the Debtor requests that the Court enter an order:

A. Scheduling a hearing as soon as the Court's calendar will allow to consider entry of an order authorizing and approving the Debtor's use of Cash Collateral on an interim basis;

B. Authorizing the Debtor's use of Cash Collateral pursuant to Section 363(c) of the Bankruptcy Code on an interim basis through May 14, 2010;

C. Scheduling a hearing on or before May 14, 2010 to consider entry of an order authorizing and approving the Debtor's use of Cash Collateral on a final basis;

D. Authorizing the Debtor's use of Cash Collateral pursuant to Section 363(c) of the Bankruptcy Code on a final basis;

E. Determining that the proposed terms in paragraph 18 above adequately protect the interests of the Secured Lenders as required by Section 361 of the Bankruptcy Code; and

F. Granting such other and further relief as is just and appropriate under the circumstances.

Dated:  April 14, 2010

/s/ Maria Ellena Chavez-Ruark
Alan M. Grochal, Bar No. 01447
Maria Ellena Chavez-Ruark, Bar No. 23941
Christopher D. Heagy, Bar No. 28776
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland  21202
Telephone (410) 752-9700
agrochal@tydingslaw.com
mruark@tydingslaw.com
cheagy@tydingslaw.com

*Proposed Counsel for the Debtor*