

**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| **In re:** | * | |
| **ALTER COMMUNICATIONS, INC.,** | * | **Case No.: 10-18241** |
| | | **(Chapter 11)** |
| Debtor. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

Upon consideration of the Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral (the "Motion") filed by Alter Communications, Inc., debtor and debtor-in-possession (the "Debtor"), pursuant to Section 363 of the United States Bankruptcy Code (the "Bankruptcy Code"), the objections thereto filed by H.G. Roebuck & Son, Inc. ("Roebuck") and the United States Trustee, and the consents of Roebuck and the United States Trustee as evidenced by their signatures below, this Court finds as follows:

A.   The relief requested in the Motion is in the best interests of the Debtor, its creditors and its estate.

B.   Notice of the Motion and hearing was proper and adequate.

C.   The Debtor is indebted to Wells Fargo Bank, National Association (as successor-in-interest to Wachovia Bank, National Association) ("Wells Fargo") pursuant to the following:

(i) a Promissory Note dated March 20, 2006 in the principal amount of $750,000; (ii) a Promissory Note dated June 9, 2008 in the principal amount of $117,000; and (iii) a Promissory Note dated April 3, 2008 in the principal amount of $46,500.  The Debtor acknowledges that, as of April 8, 2010, the Debtor is indebted to Wells Fargo in the total amount of not less than $641,460 plus legal expenses, costs and interest.  The Debtor acknowledges and stipulates that repayment is secured pursuant to several security agreements executed by the Debtor wherein the Debtor granted Wells Fargo a valid, perfected, first-priority blanket lien against all of the assets of the Debtor (the "Collateral") including the Debtor's cash collateral.  All of the above instruments, documents, papers, etc., and all other documents evidencing, securing or relating to the Obligations (as defined herein) are collectively referenced as the "Loan Documents."  All amounts due or to become due under the Loan Documents are referred to herein collectively as the "Obligations."  The Debtor stipulates that it has no defense, counter-claim, offset, cross-complaint, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of the Debtor's liability to repay the Obligations.

D. On April 20, 2010, this Court entered an Interim Order Authorizing Use of Cash Collateral [Dkt. No. 25] (the "Interim Order").

E. On May 7, 2010, Roebuck and the United States Trustee filed objections to the Motion [Dkt. Nos. 47 and 48].  As evidenced by their signatures below, Roebuck and the United States Trustee withdraw their objections and consent to entry of this Order.

Now, therefore, it is, by the United States Bankruptcy Court for the District of Maryland, hereby ORDERED:

1. The Motion is GRANTED.

2. Any objections to the Motion, to the extent not withdrawn, are OVERRULED.

#1285169v.1                                2

3. The Debtor is authorized to use Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code) of Wells Fargo, Andrew A. Buerger and Ronnie Buerger (collectively, the "Secured Lenders") on the terms set forth in the Motion and in this Order pursuant to Section 363(c) of the Bankruptcy Code through and including July 31, 2010.

4. Subject to the provisions of this Order, the Debtor may use the Cash Collateral to pay the postpetition expenses that are ordinary, reasonable and necessary to the operation of the business in conformity with the budget provided by the Debtor to the Secured Lenders. Absent the Secured Lenders' prior written consent (via letter, facsimile or email), in no event is the Debtor authorized to use Cash Collateral to pay expenses in excess of 105% of the aggregate amount of the budget for the period covered by the budget or in excess of the actual costs incurred in operating the business. None of the Cash Collateral may be used to object to or contest in any manner, or otherwise challenge, the validity, perfection, priority or enforceability of the Loan Documents, the Obligations or any liens securing repayment of such Obligations or to investigate or assert any claims or causes of action against Wells Fargo.

5. With respect to the Collateral (except as to Cash Collateral, the "Assets"), the Debtor shall use the Assets only in the ordinary course of its business and as permitted hereunder. The Debtor stipulates and agrees that: (i) without prior written consent of Wells Fargo, the Debtor shall not engage in any use of the Assets other than in the ordinary course of its business and as permitted hereunder; (ii) without prior written consent of Wells Fargo, the Debtor shall not sell, lease, hypothecate or transfer any of the Assets other than in the ordinary course of its business; (iii) the Debtor shall keep insured and properly care for the Assets; (iv) the Debtor shall be identified as the insured party relative to the insurance policy covering the Assets, rather than any other party; (v) Wells Fargo shall be identified as the loss payee relative

to the insurance policy covering the Assets; and (vi) the Debtor's deductible relative to the insurance policy covering the Assets shall not exceed $1,000.00.  If requested, the Debtor shall provide proof of insurance to Wells Fargo within five (5) days of any request for such proof.

6. Unless an objection is filed by a creditor or party-in-interest prior to the earlier of: (a) expiration of the period specified in 11 U.S.C. § 546(a); or (b) the conclusion of the first hearing on approval of a disclosure statement in this case (either of which shall be the "Termination Date"), the Secured Lenders shall be deemed to possess valid, properly perfected, non-avoidable security interests in and liens upon the Collateral.  Any such objection shall be in writing and filed with the Clerk of the Bankruptcy Court with a copy served on counsel for the Debtor, counsel for the Secured Lenders and the Office of the United States Trustee.

7. The following shall constitute an event of default (an "Event of Default") under this Order: (i) failure of the Debtor to fully perform any of its obligations as provided in this Order or breach of any covenant made herein, which shall not have been cured after two (2) days' written notice; (ii) the Debtor at any time discontinues or is ordered to discontinue the conduct of its business in the ordinary course; (iii) appointment of a trustee or of an examiner with enhanced powers for the Debtor or the property of the estate of the Debtor; (iv) conversion of the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (v) dismissal of the Chapter 11 case or of any subsequent case under Chapter 7 of the Bankruptcy Code; (vi) commencement by the Debtor of any adversary proceeding against any of the Secured Lenders in their capacity as a lender; (vii) the occurrence of a material adverse event that materially impairs the value of any of the Collateral; or (viii) any attempt to grant a party other than Wells Fargo a security interest in and lien upon the Collateral; or (ix) the filing by the Debtor of a plan that

does not provide for the payment in full of the Obligations at the rate of interest as set forth in the Loan Documents.

8. If an Event of Default occurs in as described in subparagraph 7(i) and the Debtor fails to cure, or if an Event of Default occurs as described in subparagraphs 7(ii) through (ix) for which there is no cure period, the Debtor's authority to use cash collateral shall immediately terminate without further Order. Wells Fargo may, in its discretion, file an *ex parte* application for an Order prohibiting the use of cash collateral. All rights and remedies that Wells Fargo may have at law, in equity, by statute, and in the Loan Documents are hereby preserved. The terms herein are supplemental to and not in lieu of the rights and remedies under the Loan Documents. Except as modified expressly by the terms of this Stipulation and Consent Order, the Loan Documents shall continue in full force and effect. Termination of the Debtor's right to use the Collateral shall in no manner affect the validity, enforceability or priority of the claims, liens or other protections accorded to Wells Fargo.

9. During the pendency of this case, Wells Fargo, at any reasonable time after giving the Debtor and its counsel reasonable notice thereof, shall have the right to inspect the Assets.

10. The following is determined to provide adequate protection to the Secured Lenders:

    a. With respect to Wells Fargo, the Debtor shall continue to make the monthly payments due under the Loan Documents in accordance therewith.

    b. The Debtor shall place any and all cash, checks or monies it collects, receives or derives from its business operations or the use of the Cash Collateral into the Debtor's debtor-in-possession bank account, which account shall be maintained at Wells Fargo.

    c. The Debtor shall use the Cash Collateral to pay only reasonable and necessary operating expenses incurred in the ordinary course of the

     Debtor's business, which expenses shall be identified in a 15-week budget provided by the Debtor to the Secured Lenders.

  d. The Secured Lenders shall receive replacement liens, pursuant to Section 361(2) of the Bankruptcy Code, in and to all property of the estate of the kind presently securing repayment of the Debtor's prepetition obligations to the Secured Lenders (the "Postpetition Collateral") to the extent of any decrease or diminution in the value of the Secured Lenders' interest in their prepetition collateral (the "Prepetition Collateral"), with such liens attaching to the Postpetition Collateral to the same extent and in the same priority as such liens exist on the Prepetition Collateral as of the date on which the Debtor commenced this bankruptcy proceeding.

  e. The replacement liens and security interests granted herein are valid, enforceable and fully perfected, and no further filings or recordation or other act in accordance with any applicable local, state or federal law, rule or regulation are necessary to create or perfect such liens and security interests. Notwithstanding the above, the Debtor shall cooperate with Wells Fargo to execute such documents and instruments and do such other things as Wells Fargo reasonably requests to evidence and perfect such replacement liens and security interests, and the automatic stay is hereby modified to allow Wells Fargo to file such financing statements and other documents as it may deem necessary to perfect the liens and security interests granted herein.

  f. Each Secured Lender shall have an allowed claim against the Debtor, which claim shall have priority over all other administrative expenses allowable against the Debtor under Section 507(b) of the Bankruptcy Code, to the extent that any part of the Cash Collateral is used by the Debtor for purposes not permitted by this Order or to the extent that the value of the Secured Lenders' Prepetition Collateral diminishes during the course of this case; provided, however, that the amount of any claim awarded pursuant to this paragraph shall be subject to determination by the Court upon proper notice and the opportunity for hearing.

  g. Upon request by a Secured Lender, the Debtor shall provide the Secured Lender with a compliance report (in the same form as the budget) that documents the Debtor's actual use of cash during the period covered by the budget as to each budget line item.

  11. Termination of the Debtor's right to use Cash Collateral shall in no manner affect the validity, enforceability or priority of the claims, liens or other protections accorded to the

Secured Lenders pursuant to the provisions of this Order or affect the ability of the Debtor to request expedited relief on the continued use of Cash Collateral.

12. Nothing contained herein shall require Wells Fargo to make additional loans or extend further credit, financing or other financial accommodations to the Debtor.

13. Effective as of the Termination Date and provided no suit has been filed against Wells Fargo, the Debtor hereby forever releases, relieves, forgives and discharges any and/or all prepetition claims, demands, rights, causes of action, remedies and objections and avoidance powers it has, may have or may claim to have against Wells Fargo, its employees, officers, directors, agents, representatives, attorneys and affiliates, whether known or unknown, liquidated or unliquidated, matured or unmatured, arising at any time from the time of entry and assignment of the Loan Documents and thereafter including, but not limited to, any and all claims, demands, causes of action and/or remedies, rights and objections arising out of or in any way related to: (i) the extension of credit by Wells Fargo to the Debtor; (ii) the Loan Documents; or (iii) any and all prepetition conduct and/or representations of Wells Fargo, its employees, officers, directors, agents, representatives, attorneys or affiliates.

14. The Debtor shall use its best efforts to file a plan of reorganization on or before the 120th day after the petition date.

15. Nothing herein shall be deemed to be a consent by the Secured Lenders to subordinate their secured claims to the administrative expenses of this bankruptcy proceeding or any superseding proceeding under the Bankruptcy Code except that the Secured Lenders stipulate and agree to a carveout for payment of the Debtor's professional fees in the amount of $50,000.

16. In making decisions to permit the use of Cash Collateral or in connection with operating within this Order, the Secured Lenders shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor.

17. The provisions of this Order and any action taken pursuant hereto shall survive entry of any order dismissing this proceeding or converting this proceeding to one under Chapter 7 of the Bankruptcy Code. The terms and conditions of this Order shall continue in full force and effect in this and any subsequent proceeding under the Bankruptcy Code, and the Secured Lenders' postpetition liens shall retain their priority as provided in this Order until satisfied, discharged or otherwise modified by an order of this Court.

18. Any notice to be provided to the Debtor pursuant to this Stipulation and Consent Order shall be satisfied by sending such notice in writing and transmitted to counsel for the Debtor via facsimile or email.

19. Notwithstanding any applicability of Federal Rule of Bankruptcy Procedure 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

20. This Court shall retain jurisdiction over all matters arising from or relating to the implementation of this Order.

CONSENT AS TO FORM AND CONTENT:

| /s/ William L. Hallam | /s/ Edmund A. Goldberg |
|---|---|
| William L. Hallam, Esquire | Edmund A. Goldberg (Bar No. 08943) |
| Rosenberg Martin Greenberg, LLP | Office of the United States Trustee |
| 25 South Charles Street, Suite 2115 | 101 West Lombard Street, Suite 2625 |
| Baltimore, MD 21201 | Baltimore, MD 21201 |
| (410) 727-6600 | (410) 962-4300 |
| Attorneys for H.G. Roebuck & Son, Inc. | |

<u>Certification Pursuant to Admin. Order 03-02, Ex. A, Sec. V.B.1</u>

  I HEREBY CERTIFY that the terms of the copy of the foregoing consent order submitted to the Court are identical to those set forth in the original consent order; and the signatures represented by the /s/ on this copy reference the signatures of consenting parties on the original consent order.

                /s/ Maria Ellena Chavez-Ruark
                Maria Ellena Chavez-Ruark

cc: Alan M. Grochal, Esquire
   Maria Ellena Chavez-Ruark, Esquire
   Christopher D. Heagy, Esquire
   Tydings & Rosenberg LLP
   100 East Pratt Street, 26th Floor
   Baltimore, MD  21202

   Edmund A. Goldberg, Esquire
   Office of the United States Trustee
   101 West Lombard Street, Suite 2650
   Baltimore, MD 21201

   Loc Pfeiffer, Esquire
   Hannah Hutman, Esquire
   Kutak Rock LLP
   1111 East Main Street, Suite 800
   Richmond, VA  23219-3500

   Andrew A. Buerger
   501 Hawthorne Road
   Baltimore, MD 21210

   Ronnie Buerger
   2800 Baublitz Road
   Owings Mills, MD 21117

END OF ORDER